Abnold L. Fein, J.
Application by petitioner (Siegel) for dissolution of 141 Bowery Corp., pursuant to section 1104 of the Business Corporation Law, is considered together with the motion by respondent (Lewis) to stay the dissolution proceeding and to compel arbitration.
Respondent Lewis, by agreement dated November 1, 1971, sold to his employee, Siegel, 50% of the outstanding shares of stock of Henry Lewis Lamp Shades Corp. (Lamp Shades), for $55,000, payable $10,000 on execution of the agreement and $1,000 a month thereafter until April 1,1975, at which time the balance of $5,000 is due and payable.
This stock purchase agreement gave Lewis an option, exercisable at any time prior to completion of the payments, to repurchase the stock from Siegel by repaying the moneys paid by Siegel, plus a possible additional amount depending on whether there was an increase in net worth of Lamp Shades, as determined by arbitration.
In August, 1972, Lewis and Siegel, as individuals, contracted to purchase real property ¡known as 141 Bowery in the Borough of Manhattan for $100,000. 141 Bowery is adjacent to the premises occupied by Lamp Shades, and was purchased for the purpose of expanding Lamp Shades’ business.
In September, 1972, Lewis and Siegel, each as a 50% shareholder, formed 141 Bowery Corp., which took title to premises 141 Bowery. Lamp Shades advanced the cash portion of the payment. 141 Bowery Corp., as mortgagor, executed and delivered its note and second mortgage to Lamp Shades, dated September 27, 1972, in the sum of $39,204.25, to cover the cash advanced by Lamp Shades. 141 Bowery Corp. is also obligated to Service Cash Register Corp., the vendor, by virtue of a note and purchase money first mortgage, dated September 27, 1972, for the balance of the purchase price in the sum of $62,500. *257 Lamp Shades thereafter expanded its operation, broke through the wall between the premises and occupied 141. Bowery as a tenant, without a written lease, paying a $1,000 monthly rental to 141 Bowery Corp.
In March, 1974, Lewis, claiming he discovered Siegel was diverting money from Lamp Shades’ ¡business, removed Siegel from the Lamp Shades operation. On April 7, 1974, Lewis served a written notice on Siegel, exercising the option and advising that Lewis was asking the arbitrators to “ determine the fair value ” of Siegel’s interest: On April 12, 1974, Lewis served upon Siegel a formal notice of intention, “ pursuant to the provisions of a contract dated November 1, 1971, between Henry Lewis and Murray Siegel, to conduct an arbitration with respect to the following controversy: “ Exercise of option on part of Seller to declare agreement null and void, and also to determine the net worth of the Henry Lewis Lamp Shade Corp. as provided for in the aforesaid contract.”
Paragraph 2 of the referenced agreement of November 1, 1971, the stock purchase agreement between Lewis and Siegel, provides: “ Any issue of any kind, any dispute, any difference or question of any kind relating in any manner whatsoever to this agreement, arising between the parties herein, shall be determined by arbitration ”.
Paragraph 4 of a letter agreement of June 13, 1974, signed by the attorneys for the parties, each as “ attorney in fact ” provides: “ 4. The arbitration demanded by Henry Lewis as described in paragraph ‘ 1 ’ shall include all issues arising under the agreement dated November 1, 1971, between Henry Lewis and Murray Siegel relating to Murray Siegel’s purchase of thirty (30) shares of Henry Lewis Lamp Shades Corp. from Henry Lewis. It shall also include all arbitrable issues arising pursuant to the shareholders agreement dated December 1,1971, between Henry Lewis, Murray Siegel and Henry Lewis Lamp Shades Corp.”
Paragraph 6 of the referenced December 1,1971 shareholders’ agreement provides: “ Any dispute, of any kind, in any way, arising in and out of the conditions and provisions of this agreement, or the conduct of the business of the company or the relationship between the parties hereto, shall be determined by arbitration ”.
At the time the agreements of November 1, 1971 and December 1, 1971 were executed, 141 Bowery Corp. was not in existence and premises 141 Bowery was owned by a third party. *258 There is now pending in Supreme Court, Nassau County, Siegel’s motion to disqualify the arbitrators named in the agreements and to have the court name substitute arbitrators.
Petitioner Siegel brings this proceeding for a dissolution of 141 Bowery Corp. upon the ground that there is a deadlock between Siegel and Lewis, the two sole shareholders of the corporation, in that Lewis has failed to convene a meeting of its board of directors and/or shareholders to discuss the future sale or other disposition of the building, the sole asset of the corporation and failed to make available financial statements of the corporation and its corporate records.
The petition further alleges that the rental paid by Lamp Shades is lower than the fair market value and that dissolution of the corporation is required so that “ its sole asset may be sold thus assuring equity as between petitioner and Henry Lewis, the two stockholders.”
Lewis moves to stay the dissolution proceeding and for an order directing that the controversy proceed to arbitration upon the grounds that: (1) dissolution would cause irreparable injury to Lamp Shades; (2) the proceeding is brought in bad faith to compel Lewis and Lamp Shades to pay an inflated price for Siegel’s interest in Lamp 'Shades; (3) Lamp Shades is the beneficial and equitable owner of 141 Bowery Corp. in that Lamp Shades paid for the building, which is the sole asset of 141 Bowery Corp. and financially supports it.
In essence, Lewis’ position is that 141 Bowery Corp. is the alter ego or creature of Lamp Shades and has no truly independent existence and that the entire dispute between the parties relates to their interest in Lamp Shades which perforce includes 141 Bowery Corp., all subject to arbitration by virtue of their agreements.
The April 12, 1974 notice of intention to arbitrate served by Lewis was premised on the November 1, 1971 stock purchase agreement. Siegel contends that ¡by virtue of the notice, the terms of the agreement and its arbitration clause, the limited issues for the arbitrators are (1) the cancellation of the stock purchase, and (2) the determination of the net worth of Lamp Shades. Noting that 141 Bowery Corp. wus not even in existence at the time of the execution of the agreement, Siegel argues that it cannot be compelled to submit to arbitration because it was not a party to the arbitration agreement.
However, the letter agreement of June 13,1974, provided that the arbitration “ shall also include all arbitrable issues arising pursuant to the shareholders agreement dated December 1,1971 *259 between Henry Lewis, Murray Siegel and Henry Lewis Lamp Shades Corp.” The arbitration clause in the December 1, 1971 agreement included, as subject to arbitration, disputes arising out of “ the conduct of the business of tbp company or the relationship between the parties hereto.”
Manifestly the rent which Lamp Shades, as tenant, would be required to pay to 141 Bowery Corp., as landlord, relates directly to “ the conduct of the business ” of Lamp Shades and is a vital element of the “ relationship ” among Siegel, Lewis and Lamp Shades, as are the value, ownership and disposition of premises 141 Bowery. All of these factors clearly affect the net worth of Lamp Shades and the conduct of its business, the ultimate issues which 'are the subjects of the arbitration agreed to by the parties. They are so directly related to the matters in controversy as to be arbitrable despite the fact that there is no arbitration agreement to which 141 Bowery Corp. is a party. (Matter of Microtran Co., 30 A D 2d 938.) As in that case, they arise out of the “ relationship between the parties ” to the arbitration agreement here involved.
Lamp Shades and 141 Bowery Corp. are separate entities, ostensibly with inimical interests, one 'as landlord, the other as tenant, with respect to determination of a fair rental. Obviously this is part and parcel of the disagreement between Lewis and Siegel respecting the operation of 141 Bowery Corp. and the disposition of its property. However, this is not dispositive, either as to the right to a dissolution or the obligation to arbitrate.
141 Bowery Corp. is classically a close corporation. “ To say that the corporate entity is the real party is to disregard reality.” (Siegel v. Ribak, 43 Misc 2d 7, 13.) Although it is legally a separate entity, it patently has no real interests other than those of its two shareholders, Lewis and Siegel. The entire dispute is founded upon the rupture of the relationship of Lewis and Siegel and the valuation of their respective interest in Lamp Shades. Under the circumstances, the fact th'at 141 Bowery Corp. is not a party to any arbitration agreement should not preclude submission of the issues to the arbitrators. (Siegel v. Ribak, supra.) Nor does the dispute necessarily require dissolution. “ Irreconcilable differences even among an evenly divided board of directors do not in all cases mandate dissolution ”. (Matter of Wollman v. Littman. 35 A D 2d 935.)
Where the stockholders of a corporation have entered a broad arbitration agreement which subjects to arbitration issues which might 'be the predicate of a claim for dissolution, it is *260 appropriate to stay the dissolution and direct arbitration (Matter of Moskowits v. Surrey Sleep Prods., 30 A D 2d 820). Although in that case the stockholders ’ agreement containing the arbitration clause was with respect to the very corporation which was the subject of the dissolution proceeding, the rationale is equally applicable here. The arbitrators will be required to determine all issues between Lewis and Siegel, relating to their interest in Lamp Shades and their “ relationship ” with each other. A determination by the arbitrators with respect to the interests of Lewis, Siegel and Lamp Shades in 141 Bowery Corp. and as to appropriate action with respect thereto would be within the arbitrators’ power and may well resolve the 141 Bowery Corp. dispute. The issues are inextricably interwoven.
Arbitration is particularly appropriate to this kind of a dispute within two close corporations, involving the same parties. Whether a judicial dissolution of 141 Bowery Corp. will ultimately be required need not now be determined. The court finds that all the issues between the parties are arbitrable.
Accordingly, the motion to stay the dissolution proceedings and to compel arbitration is granted, and the parties are directed to proceed to arbitration.
Settle order including a stay of the dissolution proceeding until the arbitration proceedings are finally determined and stating the issues to be arbitrated.