**Colin M. CODY, Plaintiff,**

v.

**Kevin M. WARD, Defendant.**

**No. 3:95CV169 (RNC).**

United States District Court,
D. Connecticut.

Feb. 4, 1997.

---

Jonathan Joseph Klein, Bridgeport, CT, for plaintiff.

David S. Golub, Jonathan L. Mannina, Silver, Golub & Teitell, Stamford, CT, for defendant.

*RULING AND ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

CHATIGNY, District Judge.

This case presents interesting issues of personal jurisdiction. Plaintiff Colin M. Cody, a resident of Connecticut, alleges that he invested almost $200,000 in common stock of E.N. Phillips Company ("ENP"), an installer of video bingo games in casino-style bingo halls in Louisiana, in reliance on fraudulent misrepresentations by defendant Kevin M. Ward, a resident of California. Claiming that the stock is now worthless, he seeks damages and other relief against the defendant under the Connecticut Uniform Securities Act.[1] The defendant has moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction on the ground that he engaged in no activities that would make him susceptible to suit in Connecticut [doc. # 25]. For reasons explained below, I conclude that a nonresident's transmission of fraudulent misrepresentations to a Connecticut resident by telephone and electronic mail for the purpose of inducing him to buy and hold securities renders the nonresident subject to suit in Connecticut in an action based on the misrepresentations. Accordingly, the motion to dismiss is denied.

1. *Background*

Plaintiff alleges that the defendant communicated with potential investors concerning

---

**1.** Conn.Gen.Stat. § 36b–29(a)(2) provides a buyer of a security with a cause of action against any person who "offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading...."

ENP stock via Prodigy, an on-line computer service, which maintains a forum for discussion of financial matters known as "Money Talk."[2] Plaintiff alleges that between August 1993 and May 1994, the defendant posted 225 messages on Prodigy encouraging people to buy or hold ENP shares. Most of the messages were addressed to current and potential ENP investors as a group but some were addressed specifically to particular individuals, including the plaintiff, who was known to the defendant to be a Connecticut user of "Money Talk."

The defendant's Prodigy messages purported to provide reliable factual information concerning ENP that the defendant had obtained as a result of personal contacts with the President of ENP and others intimately familiar with the company. According to the amended complaint, the defendant's messages included statements concerning the number of bingo halls in which ENP would install machines, the start-up costs at each location, the number of machines that would be placed at each location and the average amount of daily wagering that could be expected per machine.

Plaintiff alleges that in August and September 1993, he purchased 101,000 shares of ENP stock for $196,000 in reliance on materially false and misleading statements by the defendant. Plaintiff does not claim that his purchases were based solely on the Prodigy messages. Rather, he alleges that in early September 1993, while he was in the process of purchasing ENP shares, the defendant telephoned him in Connecticut four times to discuss ENP stock.[3] He further alleges that between September 1993 and May 1994, the defendant sent him at least 15 messages

regarding ENP stock by electronic mail directed to his personal computer in Connecticut, which caused him to hold his ENP shares.

### 2. Discussion

#### a. Long arm jurisdiction

■ To determine whether personal jurisdiction exists, federal courts apply the long arm statute of the forum state, subject to the limits of the due process clause of the fourteenth amendment. Plaintiff contends that the defendant is subject to suit under Connecticut's long arm statute on the ground that a person who sends false representations into Connecticut by wire "commits a tortious act within the state" as that phrase is used in Conn.Gen.Stat. § 52–59b(a)(2), the subsection of the statute applicable to non-resident individuals. Defendant contends that the long arm statute does not apply to him because he was not physically present in Connecticut when the alleged misrepresentations were made.

The Connecticut Supreme Court has not addressed the issue whether § 52–59b(a)(2) applies to a nonresident who sends oral and written misrepresentations into Connecticut.[4] However, I believe the court would conclude that the statute does apply to the tortious acts alleged in the amended complaint even though the defendant was not physically present in the state when those acts occurred.

In making this prediction, I am guided by the Connecticut Supreme Court's recent pronouncement in *Knipple v. Viking Communications, Ltd.*, 236 Conn. 602, 610, 674 A.2d 426 (1996), that "[f]alse representations en-

---

**2.** A forum on the internet is a web site resembling a bulletin board. Visitors can post messages and, in doing so, interact with each other. *See EDIAS Software Int'l, L.L.C. v. BASIS Int'l Ltd.,* 947 F.Supp. 413, 419 (D.Ariz.1996).

**3.** Plaintiff alleges that on September 8, 1993, the defendant called him in Connecticut and spoke with him for 54 minutes regarding a number of specific matters relating to ENP and its operations. He alleges that the defendant called him again the next day and spoke with him for 17 minutes. During that call, the defendant told the plaintiff that a published story impugning the integrity of ENP's President was false and urged

him to buy and hold ENP shares. The defendant's other calls to the plaintiff lasted nearly 30 minutes each.

**4.** The issue has been addressed by the Connecticut Superior Court in two cases with differing results. *Compare Braunstein v. Hayes & Thynne, P.C.,* 1993 WL 55277 *3 (Conn.Super.Ct. Feb. 16, 1993) (motion to dismiss for lack of personal jurisdiction denied) *with N.E. Contract Packers v. Beverage Services,* 1992 WL 157435 *4 (Conn.Super.Ct. June 17, 1992) (motion to dismiss for lack of personal jurisdiction granted).

tering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33–411(c)(4)," the subsection of the long arm statute applicable to foreign corporations. In support of that unequivocal statement in *Knipple,* the court cited, among other cases, *David v. Weitzman,* 677 F.Supp. 95, 98 (D.Conn.1987), where Judge Cabranes held that transmitting fraudulent misrepresentations into Connecticut by mail and telephone in connection with the sale of a condominium in Florida was conduct "within the state" for purposes of both § 52–59b(a)(2) and § 33–411(c)(4).[5] The Supreme Court's citation of *David* indicates that, like Judge Cabranes, it would construe the language of § 52–59b(a)(2) the same way it has now construed the nearly identical language of § 33–411(c)(4).

A more restrictive interpretation of § 52–59b(a)(2) is suggested by case law construing the tortious act provision of New York's long arm statute, N.Y.Civ.Prac.L. & R. § 302(a)(2). Since *Feathers v. McLucas,* 15 N.Y.2d 443, 446–64, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the New York provision has been interpreted to mean that a nonresident does not "commit a tortious act within the state" unless he is physically present in the state while the tort is committed.[6] Consistent with that interpretation, most courts sitting in New York have declined to exercise jurisdiction over nonresidents who transmitted misrepresentations into New York from outside the state.

Cases construing New York's tortious act provision would be of interest to the Connecticut Supreme Court but they would not be viewed as controlling. In *David,* Judge Cabranes noted that, although some cases have interpreted CPLR 302(a)(2) to reach nonresidents who sent misrepresentations into New York, they represent a minority view. 677 F.Supp. at 97 n. 4. The Connecticut Supreme Court's reliance on *David* in *Knipple* indicates approval of Judge Cabranes's interpretation of § 52–59b(a)(2) notwithstanding the New York cases applying a more restrictive interpretation of CPLR 302(a)(2).

Many states assert jurisdiction over a nonresident when, as in this case, oral and written misrepresentations are directed specifically to the forum. *See* R.C. Casad, *Jurisdiction in Civil Actions* § 7.06[3], at 7–89–90 and n. 244 (2d ed. 1991) (collecting cases). Interpreting Connecticut's long arm statute to reach this type of intentional tort is consistent with the statute's remedial purpose of providing Connecticut residents with a convenient forum to seek redress for losses they suffer here as a result of a nonresident's tortious actions. This interpretation of the statute is also consistent with Connecticut's traditional adherence to the doctrine that tort cases are governed by the law of the place of injury. See *O'Connor v. O'Connor,* 201 Conn. 632, 637, 519 A.2d 13 (1986).[7]

b. *Due process*

Because the defendant is amenable to suit under the long arm statute, his motion to dismiss must be denied unless exercising personal jurisdiction over him would offend due process. The "constitutional touchstone [is] whether the defendant purposefully established 'minimum contact' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The purposeful avail-

---

5. In *David,* Judge Cabranes recognized the "slight difference in the wording of these two subsections," but regarded the difference in wording as of "no significance." 677 F.Supp. at 97 n. 3.

6. This interpretation of New York's tortious act provision is derived in part from the provision's legislative history, which shows that the drafters intended "to subject non-residents to personal jurisdiction when they commit acts within the state." *Feathers,* 15 N.Y.2d at 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 (quoting N.Y. Advisory Comm. Rep. (N.Y.Legis.Doc., 1958, No. 13), at 37, 39).

7. The place of a tort for purposes of conflict of laws is not necessarily the same place as the commission of the tortious act for purposes of long arm jurisdiction. *See Feathers,* 15 N.Y.2d at 463, 261 N.Y.S.2d 8, 209 N.E.2d 68. However, in determining whether a nonresident is subject to suit under the tortious act provision of Connecticut's long arm statute, the fact that Connecticut courts traditionally adhere to the doctrine of *lex loci delicti* in tort cases is a factor to be weighed.

ment requirement is satisfied if the defendant's contacts with the forum "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum" such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. at 2183–84, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Contacts that are merely "random, fortuitous, or attenuated" do not provide an adequate basis for personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183–84.

Applying these standards, I conclude that the defendant's contacts with the plaintiff in Connecticut were substantial enough that he should reasonably have anticipated being sued here. Crediting the allegations of the amended complaint, the defendant made fraudulent misrepresentations to the plaintiff in a series of telephone calls and e-mail messages for the purpose of causing the plaintiff to purchase and hold ENP shares. Given the nature and number of the defendant's telephone calls and e-mail messages to the plaintiff, he could reasonably expect to be sued in Connecticut if the plaintiff lost the nearly $200,000 he invested in ENP stock.[8]

Because the threshold requirement of purposeful minimum contacts with Connecticut is satisfied, jurisdiction is proper unless exercising specific personal jurisdiction over the defendant on the basis of his contacts with Connecticut would be unfair. *See Burger King Corp.*, 471 U.S. at 477–78, 105 S.Ct. at 2185 ("minimum requirements inherent in concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities"). The defendant has not shown that litigating in Connecticut would be so costly or inconvenient for him that for all practical purposes he would be deprived of his day in court.[9] Connecticut has a strong interest in adjudicating this dispute and the plaintiff has an obvious interest in obtaining convenient and effective relief, which would be impaired if he were required to sue the defendant in California. Weighing all these factors, I am not persuaded that exercising jurisdiction over the defendant would be unjust.

Accordingly, the defendant's motion to dismiss is hereby denied.

So ordered.

---

8. My conclusion that the defendant's telephone calls and e-mail messages to the plaintiff in Connecticut provide an adequate basis for exercising specific personal jurisdiction makes it unnecessary to decide whether the defendant's Prodigy messages should be counted as purposeful contacts with Connecticut. *See EDIAS Software Int'l, L.L.C.*, 947 F.Supp. at 420 (message to Web site that reaches forum customers counts as forum contact under minimum contacts analysis); *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 164–65 (D.Conn.1996) (Internet advertising directed to all states, including forum, satisfies requirement of purposeful contact with forum). If it turns out that the plaintiff has to rely on the Prodigy messages to prove causation, this issue may have to be addressed.

9. The widespread use of facsimile equipment and overnight mail and the courts' increasing use of telephone conferences in lieu of live conferences reduces the burden on nonresidents of litigating in a distant state. Even depositions can be done by telephone. If telephone depositions are objectionable for some reason, a plaintiff can be required to pay or at least share travel costs associated with depositions in appropriate cases. That leaves the burdens associated with the trial itself. But relatively few cases actually go to trial. Most are resolved before then. If a plaintiff's case has sufficient merit to survive a motion for summary judgment, requiring the defendant to bear the burden of traveling to the plaintiff's state for trial makes at least as much sense as requiring the plaintiff to do the traveling. *Cf. Buckley v. New York Post Corp.*, 373 F.2d 175, 181 (2d Cir.1967) ("chief benefit to the defendant of a rule requiring the plaintiff to seek him out is the impediment this creates to the bringing of any suit at all").