The **METROPOLITAN ENTERTAIN-MENT CO., INC., Plaintiff/Counterclaimed Defendant,**

v.

James **KOPLIK and Koplik, Inc., Defendants/Counterclaimants,**

v.

John **SCHER and Ogden Entertainment, Inc. Counterclaimed Defendants.**

No. 3:98CV0280(GLG).

United States District Court, D. Connecticut.

Sept. 15, 1998.

---

A. Robert Fischer, Conrad S. Kee, Jackson, Lewis, Schnitzler & Krupman, Stamford, CT, for The Metropolitan Entertainment Co., Inc., John Scher.

Jeffrey J. Mirman, Scott A. Bennett, Levy & Droney, P.C., Farmington, CT, for James Koplik, Koplik, Inc.

### OPINION

GOETTEL, District Judge.

The Metropolitan Entertainment Co., Inc., ("Metropolitan"), is an entertainment company that specializes in concert promotions, the development of amphitheaters, artist management, theater and television promotions and productions, and the production of home videos and records. In February, 1998, Metropolitan filed suit against its former officer, employee and CEO of one of its divisions, James Koplik, and Koplik, Inc., (hereinafter

collectively referred to as "Koplik"), for *inter alia*, breach of contract, breach of fiduciary duties, conversion, violation of the Lanham Act, 15 U.S.C. § 1125, violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), unjust enrichment, and negligence. Koplik answered and counterclaimed against Metropolitan, its president, CEO, and chairman of the board, John Scher, and Ogden Entertainment, Inc., ("Ogden"), a shareholder of Metropolitan, for, *inter alia*, breach of contract, tortious interference with contractual relations, conversion, intentional infliction of emotional distress, fraud, breach of fiduciary duties, and dissolution under New Jersey Stat. § 14A:12–7. Metropolitan and Scher now ask this Court to dismiss all of the claims against Scher for lack of personal jurisdiction; to dismiss the tortious interference counterclaim for failure to state a claim upon which relief may be granted; and to dismiss four counts of the counterclaim against them as subject to mandatory arbitration or to stay these claims pending arbitration [doc. # 14]. For the reasons set forth below, Metropolitan and Scher's Motion to Dismiss and/or Stay will be denied except as to Count Eight of the Counterclaim, which we find is subject to arbitration.

### I. Personal Jurisdiction over Scher

A federal court may exercise personal jurisdiction over a foreign defendant only if the forum state's long-arm statute authorizes the exercise of jurisdiction, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–25 (2d Cir.1963) (en banc); *Harris v. Wells*, 832 F.Supp. 31, 34 (D.Conn. 1993), and if the exercise of jurisdiction does not offend the requirements of the Due Process Clause of the Fourteenth Amendment.[1] *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Greene v. Sha–Na–Na*, 637 F.Supp. 591, 595 (D.Conn.1986). The party seeking to invoke a court's jurisdiction over a nonresident defendant bears the burden of

establishing that personal jurisdiction exists. *Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1025 (2d Cir.1997); *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir.1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Unless an evidentiary hearing is held, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Hoffritz*, 763 F.2d at 57. Furthermore, for purposes of this motion, we must accept as true the allegations of the nonmoving party and must resolve all factual disputes in his favor. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986); *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 901 F.Supp. 72, 77 (D.Conn.1995). Construing all of the pleadings and affidavits filed in this action in the manner most favorable to Koplik, we find that Koplik has carried his burden of establishing a *prima facie* case of personal jurisdiction over counterclaimed-defendant Scher.

### A. Connecticut's Long–Arm Statute

■ In this case, Scher has provided an affidavit in which he states that he is not, and has never been a Connecticut resident. He does not maintain a mailing address or telephone listing in Connecticut, nor does he have any personal business contacts in Connecticut. Scher states that he does not transact business, solicit business or derive revenue from goods consumed or services rendered in this State.

Koplik, a Connecticut resident, does not dispute these statements. Instead, he bases his assertion of personal jurisdiction on Scher's commission of tortious activities within Connecticut. Connecticut's long-arm statute applicable to nonresident individuals provides in relevant part as follows:

---

1. This is true whether the court's subject matter jurisdiction is based upon diversity of citizenship of the parties or upon the existence of a federal question, unless the federal statute in question provides for nationwide service of process. The Lanham Act does not provide for nationwide service of process. *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F.Supp. 1316, 1319 (N.D.Ill. 1996).

(a) As to any cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual .... who in person or through an agent: ... (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act.

Conn.Gen.Stat. § 52–59b(a)(2). Significantly, this section does not depend on the defendant's transacting business within the State.

Koplik asserts that, in each of his claims against Scher, he is seeking recovery of damages sustained as a result of intentional tortious conduct by Scher directed toward him in Connecticut via the telephone. Specifically, Count Two seeks recovery for Scher's tortious interference with Koplik's employment contract with Metropolitan by the issuance of orders and directions by daily telephone calls to Koplik in Connecticut, which orders and directions were inimical to the business interests of Metropolitan. Count Five seeks damages for intentional infliction of emotional distress arising out of various threatening and harassing telephone calls made by Scher to Koplik in Connecticut over a seven-year period. Count Six seeks recovery for fraudulent misrepresentations made by Scher over the telephone and by facsimile to Koplik at his home in Connecticut. Count Seven alleges Scher's breach of fiduciary duties owed to Koplik by virtue of Scher's status as an officer and director of Metropolitan. Count Eight is an action for the dissolution of Metropolitan under New Jersey Stat. § 14A:12–7 because of Scher's alleged abuse of his corporate office and oppression of Koplik as a minority shareholder. Koplik has also provided an affidavit, detailing some of the telephone calls and letters that Scher directed to him in Connecticut.

In *Cody v. Ward*, 954 F.Supp. 43 (D.Conn. 1997) (Chatigny, J.), relied upon by Koplik, this Court held that a nonresident's transmission of fraudulent misrepresentations to a Connecticut resident by telephone and electronic mail, for the purpose of inducing him to buy and hold securities, rendered the nonresident subject to suit in Connecticut under Conn.Gen.Stat. § 52–59b(a)(2). Although noting that the Connecticut Supreme Court has not addressed this precise issue, this Court was guided by the holding in *Knipple v. Viking Communications, Ltd.*, 236 Conn. 602, 610, 674 A.2d 426 (1996), that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33–411(c)(4)," [2] the analogous section [3] of the long-arm statute applicable to foreign corporations.[4] *Cody v. Ward*, 954 F.Supp. at 45–46. In *Cody*, this Court reasoned that

[i]nterpreting Connecticut's long arm statute to reach this type of intentional tort is consistent with the statute's remedial purpose of providing Connecticut residents with a convenient forum to seek redress

---

**2.** The Connecticut Supreme Court cited with approval four decisions of this Court for this proposition, *Coan v. Bell Atlantic Systems Leasing International, Inc.*, 813 F.Supp. 929, 944–45 (D.Conn.1990), *David v. Weitzman*, 677 F.Supp. 95, 98 (D.Conn.1987), *Teleco Oilfield Services, Inc. v. Skandia Ins. Co.*, 656 F.Supp. 753, 758 (D.Conn.1987), and *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1171 (D.Conn.1973).

**3.** *See David v. Weitzman*, 677 F.Supp. 95, 97 (D.Conn.1987) (noting that Conn.Gen.Stat. § 52–59b(a)(2), pertaining to individual defendants, and Conn.Gen.Stat. § 33–411(c)(4), pertaining to corporations, are analogous). Both of these provisions govern tortious acts or conduct within the State. Although the Court noted a slight difference in the wording of these two subsections, the Court found no legislative history or other authority to suggest a significant difference between the two. *Id.* at n. 3.

**4.** The Supreme Court in *Knipple* also considered the question of jurisdiction over a nonresident individual defendant. However, in *Knipple*, unlike the instant case, jurisdiction was premised only upon subsection (3)(B) of Conn.Gen.Stat. § 52–59b(a), which pertains to nonresidents who commit "a tortious act outside the state causing injury to person or property within the state." This subsection has the additional requirement that the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn.Gen.Stat. § 52–59b(a)(3)(B). There was no allegation in that case that the nonresident individual defendant met this latter requirement and, therefore, the motion to dismiss was granted as to the individual defendant.

for losses they suffer here as a result of a nonresident's tortious actions. This interpretation of the statute is also consistent with Connecticut's traditional adherence to the doctrine that tort cases are governed by the law of the place of injury. *See O'Connor v. O'Connor,* 201 Conn. 632, 637, 519 A.2d 13 (1986).

*Id.* at 46.

Scher seeks to distinguish *Cody* on its facts from the instant case. Scher argues that *Cody* involved not only four telephone calls, but also at least fifteen electronic mail transmissions. We are unpersuaded by this distinction. If anything, Scher's alleged contacts with Connecticut, consisting of daily telephone calls over a seven-year period, were far more extensive than the defendant's contacts in *Cody.*

We also find persuasive the case of *David v. Weitzman,* 677 F.Supp. 95, 97 (D.Conn. 1987) (Cabranes, J.), in which this Court considered the "lynchpin" question of whether fraudulent misrepresentations sent into Connecticut from Florida by mail and the telephone constituted conduct "within the state," as that phrase is used in Connecticut's long-arm statute. In that case, the plaintiff claimed that the defendants, by false representations communicated to plaintiff through use of the telephone and mails, from Florida to Connecticut, induced the plaintiff to enter into a contract for the purchase of a condominium in Florida and to make a deposit on the condominium. This Court found that the plaintiff had sufficiently asserted a *prima facie* case of tortious conduct in Connecticut to establish personal jurisdiction under Connecticut's long-arm statutes, §§ 33–411(c)(4) and 52–59b(a)(2). *Id.* at 98. This Court further held that exercising personal jurisdiction over the nonresident defendants would not offend due process considerations. *Id.* at 99–100. This Court found that the defendants had purposefully availed themselves of the benefits of this State by fraudulently misrepresenting to a person in Connecticut that they would sell her a condominium on terms more advantageous than they ever intended to provide, thereby inducing her to purchase the condominium. *Id.* "The commission of the intentional tort of fraudulent misrepresentation has the foreseeable consequence of direct economic injury to plaintiff at her domicile in Connecticut. Connecticut would surely have an interest in providing a forum for her suit." *Id.* at 100.

Additionally, in *Teleco Oilfield Services, Inc. v. Skandia Insurance Co.,* 656 F.Supp. 753 (D.Conn.1987) (Zampano, J.), involving claims for alleged bad faith tortious acts arising from the corporate defendant's failure to pay the plaintiff's claim for insurance proceeds, this Court held that, for purposes of Connecticut's long-arm statute, Conn.Gen. Stat. § 33–411(c)(4), the alleged tortious conduct was deemed to have occurred in Connecticut. *Id.* at 758. In *Teleco,* the defendant, a Scandinavian insurer, accepted premium payments from its Connecticut insured by means of the mails and through wire transfers. The plaintiff alleged that the defendant had tortiously refused to pay its claims without proper cause; that it failed to provide a reasonable explanation for its denial of coverage; and that it misrepresented the scope of coverage at the time the policy was issued. Without delving into the merits of plaintiff's claims, this Court held that the failure to pay was deemed to have occurred in Connecticut; that the defendant's communication of the grounds for its denial of coverage was transmitted to Connecticut; and that both the active and passive misrepresentations of coverage would have been made by way of communications sent to and received by the plaintiff in Connecticut. Thus, this Court concluded that the conduct was deemed to have occurred in Connecticut. *Id.* at 758. *See also Mischel v. Senack Shoes, Inc.,* No. Civ. H–90–92 (TEC), 1990 WL 484229 (D.Conn. June 5, 1990) (holding that any fraudulent statements or misrepresentations made by the defendants to the plaintiff in Connecticut would satisfy the requirements of Conn.Gen.Stat. § 33–411(c)(4)); *Center Capital Corp. v. Hall,* No. CV 92–0452084S, 1993 WL 214614 (Conn.Super. June 9, 1993) (holding that "[e]ven where the sole contact of the defendants with Connecticut is to send fraudulent misrepresentations into Connecticut by mail and telephone, Connecticut courts have personal jurisdiction over the tortfeasors under Conn.Gen.Stat. § 33–

411(c)(4)"); *Margolis v. Gillam,* No. CV 94–0363504, 1995 WL 94548 (Conn.Super. Feb.22, 1995) (holding that Conn.Gen.Stat. § 52–59b(a)(2) reached nonresident individual defendants sued for tortious interference with a business expectancy, where they communicated by telephone with plaintiff's prospective employer in Connecticut; however, because the defendants did not initiate the contact, the court found that the due process requirement of purposeful activity had not been met).

We find the authority of *Cody, David,* and *Teleco* persuasive, and hold that the activities of Scher constituted tortious activities within the State of Connecticut for purposes of Conn.Gen.Stat. § 52–59b(a)(2), Connecticut's long-arm statute. We note that several decisions of the Superior Court of Connecticut have required the defendant to have been physically present in Connecticut in order for a plaintiff to invoke section 52–59b(a)(2). *Whitney v. Taplin,* No. CV 97339190S, 1997 WL 716522, at *2 (Conn.Super. Nov.6, 1997); *Abrams v. Riding High Dude Ranch,* No. CV 970345046, 1997 WL 791491, at *5 (Conn.Super. Nov.21, 1997). However, this requirement is not set forth in the statute, and has never been imposed by the Connecticut Supreme Court nor by this Court in construing the requirements of section 52–59b(a)(2). Therefore, we decline to follow these decisions, which are not controlling on this Court.

**B. Due Process Requirements**

■ We further hold that, by virtue of the numerous telephone calls Scher made to Connecticut, our assertion of personal jurisdiction over Scher complies with due process requirements. Due process requires that a nonresident defendant have "certain mini-

mum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. A due process analysis looks at two criteria, foreseeability and fairness. In this case, Koplik alleges that Scher purposefully and repeatedly directed his numerous telephone calls to Koplik in Connecticut, which, if true, should have led him to reasonably anticipate that he could be haled into court in Connecticut, since any injury to Koplik as a result of this conduct would have occurred in Connecticut. Assuming that Scher did, in fact, cause fraudulent misrepresentations to be communicated to Connecticut in order to induce Koplik, a Connecticut resident, to act thereon, Scher should not now be able to claim surprise at being called upon to answer suit in Connecticut.[5]

Scher relies on the case of *Pomazi v. Health Industries of America, Inc.,* 869 F.Supp. 102, 105 (D.Conn.1994), for the proposition that placing telephone calls to Connecticut does not meet the purposeful availment requirement of the Due Process clause. In *Pomazi,* this Court held that nonresident individuals' malicious telephone calls to the plaintiff's parents in Connecticut were insufficient contacts with the forum state. "There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within that forum state....' *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). That is not satisfied by a malicious phone call into the forum state." *Id.* at 106. The facts set forth in *Pomazi* are limited. Although *Pomazi* is difficult to reconcile with *Cody* and *David,* we note that the telephone calls in that case were directed to the plaintiff's parents, not to the plaintiff herself, who at the time was in California. Moreover,

---

5. Scher notes in his Reply Memorandum that Koplik does not identify who initiated the telephone calls. Reply Mem. at n. 2. Although not addressed in Koplik's affidavit, in his Counterclaim, he alleges that Scher issued orders/directions by daily telephone calls to Koplik in Connecticut which were inimical to the business interests of Metropolitan. Counterclaim at ¶ 17. He further alleges that Scher made threats to Koplik via the telephone at his home and in his car within the State of Connecticut, and that Scher made regular and recurring phone calls of

a threatening and harassing nature to Koplik at his home in Stamford, Connecticut. Counterclaim ¶¶ 39(d), (e). Although the counterclaim does not detail how many calls were made or specifically that Scher initiated the calls, for purposes of this motion to dismiss, we find the allegations adequate for us to reasonably infer that the calls were initiated by Scher. In ruling on a motion to dismiss, we are required to draw all reasonable inferences in the non-moving party's favor. *Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995).

*Pomazi* was decided before the Connecticut Supreme's Court decision in *Knipple*.

Accordingly, we hold that Koplik has carried his *prima facie* burden of showing that Scher is subject to personal jurisdiction in this Court under Connecticut's long-arm statute, Conn.Gen.Stat. § 52–59b(a)(2), and that the exercise of jurisdiction over Scher will not offend the requirements of due process. In so holding, we do not foreclose the possibility that Scher may further develop the facts that establish a lack of personal jurisdiction, such that this issue can be revisited at a full evidentiary hearing. However, at this juncture, we find that Koplik has carried his *prima facie* burden, and deny Scher's motion to dismiss Koplik's counterclaim for lack of personal jurisdiction.

## II. Tortious Interference with Contractual Relations

Counterclaimed-defendant Scher next moves this Court to dismiss Count Two of the Counterclaim for failure to state a claim upon which relief may be granted. Count Two asserts a cause of action against Scher for tortious interference with Koplik's employment relationship with Metropolitan. Koplik alleges that Scher, knowing that Koplik had an employment agreement with Metropolitan, engaged in a pattern of activity specifically designed to prevent Koplik from fulfilling his obligations under the agreement. Koplik alleges that this conduct was malicious, outside the scope of Scher's employment with Metropolitan, and not for the purpose of furthering any of Metropolitan's legitimate interests, but rather was undertaken with the wilful intent to injure Koplik by preventing his performance under the contract. Koplik states that Scher's interference resulted in Metropolitan's breach of the agreement and his constructive termination, as a result of which he suffered damages.

Scher asserts that, given his role as shareholder and officer of Metropolitan, Scher was an implied party to Koplik's relationship with Metropolitan and, thus, legally incapable of interfering with Koplik's employment relationship with Metropolitan. According to Scher, only a "stranger to a contract" may be held liable for tortious interference. *See*

*Finley v. Giacobbe,* 79 F.3d 1285, 1293–94 (2d Cir.1996).

 While generally it is true that an agent of a corporation cannot be held liable for interfering with a contract of that corporation, *Urashka v. Griffin Hospital,* 841 F.Supp. 468, 475 (D.Conn.1994), an agent can be held liable for such interference or inducement if he did not act legitimately within his scope of duty, but used the corporate power improperly for personal gain. *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 60–61, 480 A.2d 610 (1984). An agent may be said to be acting for personal gain if he seeks personal financial gain, or if he is motivated by a personal animus. *Bennett v. Beiersdorf, Inc.,* 889 F.Supp. 46, 52 (D.Conn.1995).

In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, we are to presume that all factual allegations of the counterclaim are true and all reasonable inferences must be drawn in favor of the non-moving party. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss for failure to state a claim should be granted only when "it appears beyond doubt that the plaintiff [in this case, counterclaimant] can prove no set of facts in support of [the] claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99.

 In this case, Koplik has alleged that Scher's actions were done maliciously and willfully, for the purpose of injuring Koplik, and not for any purpose of Metropolitan's. For purposes of ruling on a motion to dismiss, we find that Koplik has sufficiently alleged that Scher was not acting in his capacity as an agent of the corporation, but rather was acting for his own benefit, when he engaged in the conduct that allegedly interfered with Koplik's employment agreement with Metropolitan.

In his reply brief, Scher responds that even if, *arguendo,* the Court should find that he interfered with Koplik's employment contract with Metropolitan, he did so in order to protect the economic interest that he had in the company. He asserts that courts have recognized a qualified privilege of "economic interest" for parties whose actions, though

alleged to constitute tortious interference, are "economically justified" to protect their own interests. *See Boulevard Assocs. v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1036 n. 3 (2d Cir.1995); *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) (holding that the plaintiff could not recover unless it established that the defendant's actions were motivated by malice toward the plaintiff rather than by the presence of its own economic interests). In this case, however, Koplik has alleged that Scher acted maliciously, willfully and with the intent to injure Koplik. This is sufficient to state a cause of action for tortious interference. *See Buitekant v. Zotos Corp.,* No. CV 940135874, 1996 WL 107044, at *4 (Conn.Super. Feb. 20, 1996); *Espinosa v. Connecticut College,* No. 52 28 72, 1994 WL 320222, at *8 (Conn.Super. June 27, 1994).

Although we now hold that Koplik's counterclaim for tortious interference (Count Two) will survive a motion to dismiss, if Scher can further develop the facts through affidavit or otherwise, this issue can be revisited in a summary judgment motion. However, at this time, we deny the motion to dismiss Count Two for failure to state a claim upon which relief may be granted.

### III. Mandatory Arbitration

The last point urged by Scher and Metropolitan is that Counts Six through Nine are subject to arbitration and that this Court should dismiss these counts or stay them pending mandatory arbitration. These counts are for fraud against Scher, breach of fiduciary duty against Scher, dissolution against Metropolitan, Scher, and Ogden, and breach of the Shareholders' Agreement by Metropolitan's failure to allow Koplik to inspect the corporate books and records. Scher and Metropolitan rely on the arbitration clause set forth in the Shareholders' Agreement, dated September 7, 1995, which provides as follows:

**XVI. SETTLEMENT OF DISPUTES**

Where in this Agreement the Shareholders are required to mutually agree they hereby undertake to enter into discussions and negotiate in good faith and to use all reasonable efforts to arrive at an agreement which is in the best commercial interests of the Company. In the event of *any dispute between the Shareholders arising out of this Agreement or any matter related thereto,* the Shareholders shall refer the matter to arbitration in New York, New York in accordance with the rules of the American Arbitration Association then in effect, and the judgment upon any award rendered may be entered in any court having jurisdiction thereof, and any such party may, if it so elects, institute proceedings in any court having jurisdiction for the specific performance by any party of any award. In any such arbitration, the arbitrator shall be selected by the American Arbitration Association in accordance with its rules and regulations. Arbitration as aforesaid shall be a condition precedent to any other action under law. (Emphasis added).

The Shareholders' Agreement was entered into by and between Ogden Entertainment, Inc., a 45–percent shareholder, Scher, a 45–percent shareholder, Koplik, a six-percent shareholder, and Shelly Finkel, a four-percent shareholder, who is not a party to this lawsuit. These three individuals and Ogden were collectively referred to as "Shareholders." Metropolitan was also a party to and signatory to the Shareholders' Agreement, and was referred to therein as "the Company." In very general terms, the Agreement pertained to the management and operation of Metropolitan. It also contained an integration clause, stating that "[t]his Agreement, together with all Exhibits thereto, constitutes the entire agreement with respect to the subject matter hereof." (Shareholders' Agreement ¶ 22.02).

■ The Federal Arbitration Act of 1925, 9 U.S.C. §§ 1–14, ("FAA"), governs arbitration agreements connected with a transaction involving interstate or foreign commerce. 9 U.S.C. § 1. "Commerce" is defined as "commerce among the several States ... but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Because the Shareholders'

Agreement at issue in this case concerns the management and operation of Metropolitan in numerous states, including New York, New Jersey, Delaware, Pennsylvania, Connecticut, Massachusetts, Rhode Island, Vermont, New Hampshire, and Maine, (Shareholders' Agreement ¶ 3.01), we hold that it involves interstate commerce and is subject to the FAA.

■ Under the FAA, 9 U.S.C. § 3, a district court must stay proceedings if it is satisfied that the parties have agreed in writing to arbitrate an issue underlying the district court proceedings. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). There is a strong federal policy favoring arbitration as an alternative dispute resolution mechanism. *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 981 (2d Cir.1996). As a necessary corollary, any doubts concerning the scope of arbitrable issues or whether there has been a waiver of arbitration must be resolved in favor of arbitration. *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107–08 (2d Cir.1997); *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir.1995). Accordingly, federal policy requires that arbitration clauses be construed as broadly as possible. *Collins & Aikman*, 58 F.3d at 19. We are required to compel arbitration unless it can be said with "positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir.), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). "These are rules of construction, however, and what we construe is a contract. Accordingly, federal law does not require parties to arbitrate when they have not agreed to do so." *Col-*

*lins & Aikman*, 58 F.3d at 19 (internal quotations and citations omitted).

The primary focus of the parties' arguments on the question of arbitration is whether the four counterclaims are covered by the arbitration clause, that is, whether they arise out of or relate to the Shareholders' Agreement. Alternatively, Koplik argues that Metropolitan and Scher waived their contractual right to insist upon arbitration. Because we find that Metropolitan was not a party to the arbitration clause, we treat the motions of Metropolitan and Scher separately.

## A. Arbitrability of Count Nine against Metropolitan

■ We begin by considering whether Metropolitan can compel arbitration of the counterclaims asserted by Koplik against it. As Koplik points out in his brief, the arbitration clause refers only to disputes between the "Shareholders," which, as noted above, is defined in the Agreement as including only Ogden, Scher, Koplik, and Finkel. Shareholders' Agreement at 1. It does not include Metropolitan, which, although a party to the Agreement, is referred to as the "Company." *Id.* Therefore, any disputes between Koplik and Metropolitan are not covered by the arbitration clause in the Shareholders' Agreement, and Metropolitan's request for a stay does not fall within the purview of the FAA.[6] *Cosmotek Mumessillik Ve Ticaret Limited Sirkketi v. Cosmotek USA, Inc.*, 942 F.Supp. 757, 760 (D.Conn.1996).

■ That finding, however, does not end our inquiry. This Court still has the discretion to grant a stay by virtue of its inherent power to control the disposition of cases on its docket. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F.Supp. 499, 501–02 (S.D.N.Y.1995). In *CosMotek, supra,* we held that, in exercising this discretion, the primary questions to be addressed are whether there are common issues in the arbi-

---

**6.** Metropolitan apparently considers this provision to apply to it, for Metropolitan is one of the parties to the arbitration demand filed with the American Arbitration Association.

tration and court proceeding and, if so, whether those issues will be finally determined by the arbitration. 942 F.Supp. at 760. If the answer to both of these questions is in the affirmative, then the movant (in this case, Metropolitan) must bear the "heavy burden of showing that the nonarbitrating party will not hinder the arbitration, that the arbitration will be resolved within a reasonable time, and that such delay that may occur will not cause undue hardship to the parties." *Id.* A stay will not be granted if the moving party has not shown that Koplik would not undergo undue hardship from the resultant delay. *Id.*

■ In this case, Metropolitan obviously will not hinder the arbitration, since, although it is not a party to the arbitration clause, it has joined in the demand for arbitration filed on June 15, 1998.[7] However, we are faced with the unusual situation of the moving party's seeking a stay of certain of the counterclaims against it, yet apparently wishing to continue to pursue its own claim against Koplik for breach of the Shareholders' Agreement (Count Four of the Complaint), which is the very matter on which the demand for arbitration was filed. Additionally, there are numerous other counts in the Complaint and Counterclaim involving Koplik and Metropolitan that are not related to the Shareholders' Agreement that will have to be litigated.

In deciding whether to stay the counterclaims against Metropolitan, we also consider that this action was instituted by Metropolitan, not Koplik, that Koplik has been forced to respond to a substantive motion filed by Metropolitan, that the parties have already

submitted their Rule 26(f) Report of Parties' Planning Meeting, and that Metropolitan has engaged in discovery of Koplik that would not be available in the arbitration process.[8]

More importantly, however, we find that the matters involved in the arbitration—whether Koplik breached the non-compete provision of the Shareholders' Agreement—and the matters asserted against Metropolitan in the Counterclaim—whether Metropolitan breached the Agreement by refusing to allow Koplik to inspect the corporate books and records—are sufficiently unrelated that a stay is not warranted. Accordingly, we exercise our discretion and deny Metropolitan's motion to dismiss Count Nine of the Counterclaim against it as subject to mandatory arbitration and we deny Metropolitan's alternative request for a stay of that claim pending arbitration.

## B. *Arbitrability of Counts Six and Seven against Scher*

We now turn to the question of whether Counts Six and Seven of the Counterclaim against Scher are covered by the arbitration clause. The arbitration clause is broadly worded, covering "any dispute between the Shareholders arising out of this Agreement or any matter related thereto."

Koplik argues that Counts Six (fraud) and Seven (breach of fiduciary duty) pertain to a stock transfer which was induced by fraudulent misrepresentations by Scher, and which was accomplished through the execution of a "Letter Agreement" predating the Shareholders' Agreement. Scher responds, that

---

7. The demand for arbitration was filed by Scher, Ogden Entertainment Services, Inc., and Metropolitan. It describes the nature of the dispute as follows:

This is an arbitration proceeding commenced pursuant to the terms of a Shareholders' Agreement entered into by and between the claims and respondent on September 7, 1995 (the "Agreement"). Respondent has breached Paragraph 15.02 of the Agreement which prohibits participation in ventures which compete with the business of The Metropolitan Entertainment Company, Inc. Respondent has also breached the arbitration provision of the Agreement (Article XVI) by asserting counterclaims for matters arising out of or relating to

the Agreement in a federal court action captioned *The Metropolitan Entertainment Company, Inc. v. James Koplik and Koplik, Inc.*, U.S.D.C., Dist. Conn., 3–98–00280(GLG).
The relief sought is "compensatory damages in an amount to be determined, but believed to exceed $250,000 and specific performance of Koplik's obligation to forbear from participation in ventures which compete with the business of Metropolitan Entertainment Company, Inc."

8. On May 7, 1998, Metropolitan served its first set of interrogatories and requests to produce, to which Koplik responded on June 12, 1998. Thus, even after asking for a stay, Metropolitan proceeded with discovery.

even though this transfer was not "accomplished by" the Shareholders' Agreement, it "related to" the Agreement.

At the outset, we must decide whether the arbitration agreement is broad or narrow, and, if broad, there is a presumption that the claims are arbitrable. *Collins & Aikman,* 58 F.3d at 20 (internal quotations and citations omitted). The arbitration clause in this case, covering any dispute "arising out of [the] Agreement or any matter related thereto," has been held to be "the paradigm of a broad clause." *Id.* (citing *Threlkeld,* 923 F.2d at 251). Thus, there is a presumption that the claims against Scher are subject to arbitration.

In determining whether Counts Six and Seven against Scher fall within the parties' arbitration agreement, we must focus on the allegations in the Counterclaim, rather than the legal causes of action asserted. "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 622 n. 9, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

Counts Six and Seven allege that, beginning in 1995, Scher commenced a course of conduct specifically designed to fraudulently reduce Koplik's ownership interest in Metropolitan. In May, 1995, Scher began negotiations with Ogden that later resulted in Ogden's acquisition of an ownership interest in Metropolitan. At the time, Scher owned 40% of Metropolitan; Koplik and Finkel owned 20%; and Polygram owned 40%. During the course of these negotiations with Scher, Ogden offered to purchase Polygram's interest, as well as part of Scher's, Koplik's and Finkel's interests. Koplik, unaware of this stock purchase offer, subsequently entered into a Letter Agreement with Scher, whereby he sold a portion of his ownership interest in Metropolitan to Scher, which Scher subsequently sold to Ogden. Pursuant to the Letter Agreement, Scher took over as President of Metropolitan,

and Koplik became President of one of its divisions. Thus, by the time the Shareholders' Agreement was executed, these events had already transpired, and Ogden held a 45–percent interest in Metropolitan, Scher held 45 percent of the shares, and Koplik's interest had been reduced to six percent.

Koplik claims that Scher knowingly and fraudulently kept him in the dark as to his dealings with Ogden, so that Koplik would transfer part of his stock to Scher. Koplik alleges that, not only was he defrauded by Scher, but that Scher, as an officer and director of Metropolitan owed Koplik certain fiduciary duties, including disclosure of material information and the obligation to deal with him in the utmost good faith. Koplik asserts that, by failing to disclose the stock purchase offer from Ogden, Scher breached these fiduciary duties owing to Koplik.

All of these alleged events occurred prior to the parties' entering into the Shareholders' Agreement. We find that the facts underlying Koplik's claims in Counts Six and Seven do not touch on matters covered by the Shareholders' Agreement and, therefore, are not covered by the arbitrations clause. Indeed, these claims would exist even if there had never been a Shareholders' Agreement. Accordingly, we find that they are not subject to the arbitration clause in the Shareholders' Agreement.

### C. Arbitrability of Count Eight against Metropolitan and Scher

In Count Eight, Koplik, now a four-percent minority shareholder, seeks dissolution of Metropolitan based upon Scher's history of self-dealing, mismanagement of the corporation, abuse of his authority as an officer and director, and his efforts to oust Koplik from participation in the management of Metropolitan and to dilute his ownership interest, thereby frustrating his expectations as a minority shareholder of the corporation. As a result of this alleged conduct, Koplik seeks dissolution of the corporation pursuant to New Jersey Stat. § 17A:12–7, or, in the alternative, an order requiring Scher to sell his stock to Koplik.

Although much of the alleged misconduct occurred prior to the Shareholders' Agree-

ment, part of it occurred thereafter and presumably continues to date. We find that this claim relates to the matters set forth in the Shareholders' Agreement, which discusses the management, financing, and operation of Metropolitan and the parties' respective duties. Therefore, we hold that this claim by Koplik against Scher and Ogden is covered by to the arbitration clause. *See, e.g., Siegel v. 141 Bowery Corp.,* 362 N.Y.S.2d 897, 80 Misc.2d 255 (1974), *aff'd,* 380 N.Y.S.2d 232, 51 A.D.2d 209 (1976) (granting a stay of application for dissolution of corporation pending arbitration).

Although, as noted above, Metropolitan is not subject to this arbitration clause, we exercise our inherent discretion and stay the litigation of this one claim as to Metropolitan.

In arguing against arbitration, Koplik expresses his concern over the piecemeal litigation and the possibility of inconsistent results if part of his counterclaim is referred to arbitration, but the remaining counterclaims and the original complaint by Metropolitan remain with this Court. Given our rulings on the arbitrability of the various counterclaims, we do not see this as a real concern. Even so, the Supreme Court has indicated that courts must act to enforce arbitration agreements protected by the FAA even though arbitration may sometimes result in piecemeal resolution. *Moses H. Cone Memorial Hospital,* 460 U.S. at 20, 103 S.Ct. 927. The Second Circuit has ruled that, at least where claims brought under the Securities Act of 1933 are concerned, arbitration and federal litigation should proceed simultaneously. *Chang v. Lin,* 824 F.2d 219, 223 (2d Cir.1987).

Therefore, we have no difficulty in finding that one, but not all, of the claims is subject to arbitration. Accordingly, we deny Scher's motion to dismiss Counts Six and Seven. We grant Scher and Metropolitan's motion to stay as to Count Eight, which we hold is subject to mandatory arbitration.

### Conclusion

The Motion to Dismiss or, in the Alternative, to Stay Proceedings Pending Arbitration [**Doc. # 14**] is DENIED, except as to Count Eight of the Counterclaim, which is stayed pending arbitration.

SO ORDERED.